# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL DOWDALL,

FREEDOM RANCH FRAMS, LLC,

COLEEN DOWDALL *and* PHOENIX

RISING STABLES, LLC,

    Plaintiffs,

           v.

DOWNS RACING, L.P. and

ANTHONY MARCHELLI,

    Defendants.

NO. 3:19-CV-1419

(JUDGE CAPUTO)

## **MEMORANDUM**

    Presently before me are motions to dismiss plaintiffs, Michael Dowdall, Coleen Dowdall, Freedom Ranch Farms, LLC, and Phoenix Rising Stables, LLC, (collectively "the Plaintiffs") complaint against the Defendants, Downs Racing, L.P. and Anthony Marchelli. (*See* Docs 2, 13). Marchelli filed a Motion to Dismiss the third count of the complaint, wrongful search and seizure under the Fourth Amendment, which was alleged against him, arguing that the Plaintiffs have failed to state a cognizable claim. (*See* Doc. 2). Because the Plaintiffs have not adequately plead count three, wrongful search and seizure under the Fourth Amendment, Marchelli's Motion to Dismiss will be granted. Pursuant to 28 U.S.C. § 1367, the remaining counts, which came before me on the basis of supplemental jurisdiction, will be remanded to state court for further proceedings.

## **I. Background**

    The facts from the Plaintiffs' Complaint (Doc. 1-2), taken as true and viewed

in the light most favorable to the Plaintiffs, are as follows:

Michael Dowdall is a racehorse trainer with over thirty years of experience in the industry. (Doc. 1-2, at 8 ¶ 8). He has raced in over 4,600 races in Ohio, Pennsylvania, and New York. (Doc. 1-2, at 8 ¶ 8). From 2015 through 2017, he earned over $2,700,000 in purse winnings. (Doc. 1-2, at 8 ¶ 8). Dowdall has been racing horses at the Mohegan Sun at Pocono Downs racetrack ("Pocono Downs") for five years, which is incorporated as Downs Racing, L.P. (Doc. 1-2, at 8 ¶¶ 5, 9). Dowdall trains and races horses through his company Freedom Ranch Farms, LLC. (Doc. 1-2 at 8 ¶ 11).

In spring 2018, Dowdall applied to race at Pocono Downs by filing an application for nine racehorses that he had trained. (Doc. 1-2, at 8 ¶ 12, 17-20). Pocono Downs accepted his application. (Doc. 1-2 at 9 ¶ 14). On April 10, 2018, Dowdall was preparing two of his horses, "Love Forbidden" and "Believe in the Spirit," for a race. (Doc. 1-2 at 9 ¶ 15). While in the stables at Pocono Downs, Dowdall was approached by Marchelli, who was acting as an agent of the State Horse Racing Commission, Bureau of Standardbred Horse Racing (the "commission"). (Doc. 1-2 at 9 ¶ 16). This Bureau is situated in the Pennsylvania Department of Agriculture and is responsible for protecting the integrity of Standardbred Racing in the Commonwealth of Pennsylvania. (Doc. 1-2 at 9 ¶ 17). Marchelli approached Dowdall when he was feeding his horses "an all-natural supplement," designed to treat their allergies, and demanded permission to test the supplement. (Doc. 1-2 at 9 ¶ 17). He also insisted on searching Dowdall's person and the surrounding area for contraband. (Doc. 1-2 at 10 ¶ 21). Dowdall largely complied with Marchelli's requests, allowing Marchelli to confiscate the all-natural herbal supplement and search the premises, but not his person. (Doc. 1-2 at 10 ¶ 23). Marchelli refused to allow Dowdall's horses to compete, because he believed Dowdall had administered a Schedule 1 or Schedule 2 narcotic to them and proceeded to initiate a proceeding before the Bureau of Standard Bred Horses. (Doc. 1-2 at 10 ¶ 25, 28). The proceeding resulted in Dowdall receiving

a penalty. (Doc. 1-2 at 11 ¶ 29). Dowdall ultimately settled with the Bureau's Director and Marchelli by agreeing not to pursue an appeal in exchange for a $2,000 fine and a fifteen day suspension among other stipulations. (Doc. 1-2 at 11 ¶ 29). Notwithstanding this agreement, Pocono Downs has (1) indefinitely barred Dowdall from racing any horses at its racetrack and (2) banned any of the horses previously entered by Dowdall from being entered and raced by a different trainer. (Doc. 1-2 at 11 ¶ 30-31).

In summer 2018, Dowdall's wife Coleen Dowdall, the owner and operator of Phoenix Rising Stables, LLC, attempted to race a horse, which she owns and a non-party trains, at Pocono Downs . (Doc. 1-2 at 12 ¶ 34). The Director of Pocono Downs, however, refused the horse, explaining that any horse either trained by her husband or trained at a farm where her husband also trains other horses is banned from Pocono Downs. (Doc. 1-2 at 12 ¶ 35). Due to Pocono Downs's treatment of the Plaintiffs, specifically the ban imposed on their horses and/or horses that they have trained, the Plaintiffs claim that they have experienced significant financial detriment. (Doc. 1-2 at 12 ¶ 36).

The Plaintiffs originally filed this action in the Court of Common Pleas of Luzerne County, and it was timely removed. (Doc. 1). Marchelli's Motion to Dismiss (Doc. 2) has been fully briefed and is ripe for review.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of the grounds for the claim. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*). While detailed factual allegations are not required, conclusory

statements that allege the complainant is entitled to relief are inadequate. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions that provide the framework for a complaint must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When considering a Rule 12(b)(6) motion, a court is limited to determining if a plaintiff is entitled to offer evidence in support of his or her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). A court does not consider whether a plaintiff will ultimately prevail. *Id*. The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). If there are well-pleaded factual allegations, then a court must assume their truthfulness in deciding whether they raise an entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 679 (2007). Dismissal is only appropriate when, accepting as true all the facts alleged in the complaint, Plaintiff has not plead enough factual allegations to provide a reasonable expectation that discovery will lead to evidence of each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

In deciding a Rule 12(b)(6) motion, a court considers the allegations in the complaint and exhibits attached to the complaint. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In addition to the complaint and any exhibits attached, a court may examine "legal arguments presented in memorandums or briefs and arguments of counsel." *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002) (quotation omitted). A court may also consider a "document integral or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). At bottom, documents may be examined by a court when ruling on a motion to dismiss when the plaintiff had proper notice of the existence of the documents. *Id*. A

court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## III. Discussion

The Plaintiffs allege three claims, counts one and two, breach of contract and promissory estoppel respectively, against Downs Racing, L.P. and count three, wrongful search and seizure under the Fourth Amendment, against Marchelli. (*See* Doc. 1-2, at 12-15). Marchelli moves separately to dismiss count three for failure to state a claim upon which relief could be granted. (*See* Doc. 2).

### A. The Fourth Amendment Claim

In count three, the Plaintiffs allege that Dowdall had not "committed any infraction or otherwise to legally justify the search and seizure" that Marchelli conducted. (Doc 1-2 ¶ 50). Thus, Dowdall suffered a violation of his Fourth Amendment rights. (Doc 1-2 ¶ 52). Pennsylvania's Race Horse Industry Reform Act sets forth the occupational licensure requirements and expectations for those involved in various horse racing activities, including trainers. *See* 3 Pa. Cons. Stat. § 9323(n). It provides in relevant part:

> (1) The commission, the Attorney General and the Pennsylvania State Police shall have the authority without notice and without warrant to do all of the following in the performance of their duties:
>
> > (i) Inspect and examine all premises where horse racing is conducted or where records of these activities are prepared or maintained.
> >
> > (ii) Inspect all equipment and supplies in, about, upon or around premises referred to in subparagraph (i).
> >
> > (iii) Seize, summarily remove and impound equipment and supplies from premises referred to in subparagraph (i) for the purposes of examination and inspection.
> >
> > (iv) Inspect, examine and audit all books, records and documents

5

>     pertaining to a licensee's operation.
>
>     (v) Seize, impound or assume physical control of any book, record, ledger or device.
>
> (2) The provisions of paragraph (1) shall not be deemed to limit warrantless inspections except in accordance with constitutional requirements.

3 Pa. Cons. Stat. § 9323(n)(1)(i-iii).

Both parties analyze this provision under the administrative search exception to the general warrant requirement of the Fourth Amendment. (*See* Docs. 4, 17). The Plaintiffs argue that Dowdall's constitutional rights do not fall secondary to the dictates of his horse racing license. (Doc. 17, at 9). In his Motion to Dismiss, Marchelli argues that Dowdall has failed to state an actionable claim under the Fourth Amendment, because his conduct was permissible due to the decreased expectation of privacy on commercial property that is used in heavily regulated industries, *i.e.*, horse racing. (Doc. 4, at 12-16). I agree with Marchelli that Dowdall has failed to state a claim under the Fourth Amendment, because Marchelli's conduct falls under the administrative search exception. Thus, I will dismiss count three, wrongful search and seizure under the Fourth Amendment, with prejudice.

The Fourth Amendment prohibits unreasonable, warrantless searches in a person's home or business. U.S. Const. Amend. IV. It is well established that people have a reasonable expectation of privacy in their home or business. *Katz v. United States*, 389 U.S. 347, 361 (1967). On the other hand, "this expectation is particularly attenuated in commercial property employed in 'closely regulated' industries." *New York v. Burger*, 482 U.S. 691, 700 (1987) (internal quotations omitted). "Certain industries have such a history of government oversight that no reasonable expectation of privacy [can] exist for a proprietor over the stock of such an enterprise." *Id.* (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312–313 (1978)). Individuals "who choose[] to enter such a business must already be aware" of such government supervision. *Frey v. Panza*, 621 F.2d 596, 597 (3d Cir. 1980) (*Marshall*, 436 U.S. at 313). Thus, courts should "focus [] on whether the

'regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.'" *Burger*, 482 U.S. at 705 (quoting *Donovan v. Dewey*, 452 U.S. 594, 600 (1981)). "Those who voluntarily engage in such licensed and regulated businesses accept the burdens as well as the benefits of the trade." *Frey*, 621 F.2d at 597.

Horse racing is a pervasively regulated activity as it has been the subject of both state and federal regulations for decades. These statutes regulate a wide variety of aspects involving horse racing activities, including licensure for horse racing personnel, fees, inspection, penalties, operations, and enforcement. *See, e.g.*, Race Horse Industry Reform Act, 3 Pa. Cons. Stat. § 9301 *et seq.*; Rules of Racing, 58 Pa. Code § 183 *et seq.* (state regulations); The Interstate Horseracing Act of 1978, 15 U.S.C. § 3001 *et seq.*; Activities Relating to Race Horses, 29 C.F.R. § 780.122 (federal regulations). Since 1980, individuals in Pennsylvania, who engage in horse racing activities, have been on notice that they are subject to inspections on track premises by the Commonwealth, commission, and their representatives, who may confiscate the results of their searches. *See* Race Horse Industry Reform Act, 3 Pa. Cons. Stat. § 9323(n)(1)(i-iii) (effective in 2016); *see also* Rules of Racing, 58 Pa. Code § 183.344 (adopted in 1980).

To determine whether a warrantless inspection of a regulated industry survives constitutional scrutiny, the Supreme Court set forth a three-prong test. *Burger*, 482 U.S. at 702. First, there must be a "substantial" government interest in regulating the industry in which the search is made. *Id.* Second, the warrantless searches must be necessary to further the government interest. *Id.* at 702-3. Third, "the regulatory statute must . . . advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Id.* at 703. "To perform this first function, the statute must be 'sufficiently comprehensive and defined that the owner

of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes.'" *Id.* (quoting *Donovan*, 452 U.S. at 600).

### 1. Substantial Government Interest

There is a substantial government interest in regulating the horse racing industry. The government has a substantial interest in establishing standards for "non-essential, dangerous, and sensitive industries to protect the public safety and welfare," *e.g.*, horse racing. *Shoemaker v. Handel*, 619 F. Supp. 1089, 1106 (D.N.J. 1985), *aff'd*, 795 F.2d 1136 (3d Cir. 1986). The state has a vital interest in ensuring that horse races are conducted in a safe and honest manner to promote and maintain the integrity of the industry. *See, e.g.*, *Adamo v. Dillon*, 900 F. Supp. 2d 499, 511 (M.D. Pa. 2012), *aff'd*, 539 F. App'x 51 (3d Cir. 2013) (stating "the state has an interest in preserving the integrity of horse racing"); *Man O'War Racing Ass'n v. State Horse Racing Comm'n*, 250 A.2d 172, 176 (Pa. 1969) (noting that "the magnitude of the tax revenues to be raised, the enormous amounts of money which will be wagered at Pennsylvania tracks, the importance of responsible supervision of legalized gambling and the importance of the proper introduction of thoroughbred racing as a sport in the Commonwealth" demonstrates the importance of government regulation due to the number of public interest implications that horse racing raises). Not only has horse racing been regulated at the federal, state, and local level for years, Congress is currently contemplating a new act that would specifically serve "[t]o improve the integrity and safety of horse racing by requiring a uniform anti-doping and medication control program." Horseracing Integrity Act of 2019, H.R.1754, 116th Cong. (2019). Thus, the first prong of the administrative search exception test is satisfied here.

### 2. Furthering the Regulatory Scheme

The warrantless confiscation of the supplement that Dowdall was feeding to his horses and search of the premises (Doc. 1-2 at 10 ¶ 23) furthers the regulatory

scheme set forth in Pennsylvania's Race Horse Industry Reform Act (*see* 3 Pa. Cons. Stat. § 9301 *et seq*.) and its Rules of Racing (*see* 58 Pa. Code § 183.344). With regard to the second prong of the administrative search exception test, the Supreme Court noted that:

> If inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible.

*Burger*, 482 U.S. at 710 (internal quotations omitted). The purpose of Pennsylvania's Race Horse Industry Reform Act is to maintain the integrity of horse racing, while protecting the health and well-being of these domesticated animals. *See* 3 Pa. Cons. Stat. § 9301 *et seq*. In this case, random and unannounced searches maintain adequate supervision over horse racing and help detect illegal pari-mutuel betting by horse racing personnel through the use of improper racing devices, such as unlawful drugs and drug related paraphernalia. The time needed to procure a warrant to search and/or confiscate the substances provided to a horse right before a race would frustrate one purpose of this regulatory scheme, restricting the use of performance enhancing substances that degrade the integrity of honest horse racing. *See, e.g.*, *LeRoy v. Illinois Racing Bd.*, 39 F.3d 711, 714 (7th Cir. 1994) (citing *Dimeo v. Griffin*, 943 F.2d 679, 684 (7th Cir.1991)) (stating that the public interest in drug testing, without a warrant or person-specific cause, at race tracks is substantial because "drugs (whether administered to horses or ingested by jockeys) diminish the safety of a sport that is already dangerous given the size and speed of horses, and the potential for use of drugs to affect races diminishes public confidence in the races and thus jeopardizes the revenue obtained from taxes on wagers"); *Lanchester v. Pennsylvania State Horse Racing Comm'n*, 325 A.2d 648, 653 (Pa. 1974) (stating that the government's interest in conducting warrantless searches of trainers on racetrack premises must prevail due to "the obvious impossibility" of effectively preventing the future use of illegal drugs and devices if

warrants were required before searches). Therefore, the second prong of the administrative search exception test is met.

### 3. Constitutional Adequacy

Pennsylvania's Race Horse Industry Reform Act effectively alerts horse racing personnel that searches on racetrack premises are being made pursuant to law and properly defines the scope and limitations of the inspecting officials. With regard to the third prong, the Supreme Court noted that statutes authorizing warrantless inspections without "a fixed number of inspections for a particular time period" are constitutional. *Burger*, 482 U.S. 712 n.21. Here, the Race Horse Industry Reform Act adequately explains who is subject to search, *i.e.*, "racing vendors, trainers, jockeys, drivers, horse owners, backside area employees and other individuals participating in horse racing and all other persons required to be licensed as determined by the commission." 3 Pa. Cons. Stat. § 9323(a). The Race Horse Industry Reform Act limits these warrantless searches to "all premises where horse racing is conducted or where records of these activities are prepared or maintained," which includes the warrantless confiscation of all supplies and equipment on and around such premises. 3 Pa. Cons. Stat. § 9323(n)(1)(i-iii). Those authorized to search are "[t]he commission, the Attorney General and the Pennsylvania State Police." 3 Pa. Cons. Stat. § 9323(n)(1). Since the Race Horse Industry Reform Act appropriately advises those subject to search and provides for inspections that are limited in time, place, and scope, this statute is a constitutionally adequate substitute for a search warrant. Accordingly, I will grant Marchelli's Motion to Dismiss, because his search of Dowdall complied with the dictates of the Fourth Amendment.[1]

---

[1]

Third Circuit "precedent supports the notion that in civil rights cases district courts must offer amendment - irrespective of whether it is requested - when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee*

### B. Remaining State Law Claims

The Plaintiffs also allege two claims, counts one and two, breach of contract and promissory estoppel respectively, against Downs Racing, L.P. (*See* Doc. 1-2, at 12-14). A federal court has supplemental jurisdiction over any state law claims which arise out of the same case or controversy as those claims over which the court has original jurisdiction. 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction if it has dismissed all the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). When a case comes before a district court via removal from state court and, at any time before final judgment, it appears that the court lacks subject matter jurisdiction, then the court must remand the case. 28 U.S.C. § 1447(c); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

As just explained, the sole federal law claim in this action will be dismissed with prejudice. The remaining claims, counts one and two, breach of contract and promissory estoppel respectively, originate under state law and come before me through supplemental jurisdiction. Given that these state law claims have not progressed beyond the filing of a single motion to dismiss by Downs Racing, L.P. (*see* Doc. 13), I see no reason that I should retain jurisdiction over the state law claims. Matters of state law are best left to the state courts. Therefore, I decline to continue to exercise supplemental jurisdiction over the remaining claims in the case. Those claims will be remanded to state court.[2]

---

*Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Amendment is futile "if the amended complaint would not survive a motion to dismiss." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

[2] This opinion focuses on Defendant, Marchelli's Motion to Dismiss (Doc. 2), which pertains to count three, wrongful search and seizure under the Fourth Amendment. Since I am dismissing count three, which provides the basis for supplemental

## IV. Conclusion

For the above stated reasons, I grant Defendant, Marchelli's Motion to Dismiss (Doc. 2). The remaining state law claims, breach of contract and promissory estoppel, against Defendant, Downs Racing, L.P. will be remanded to state court.

An appropriate order follows.

January 16, 2020  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge

---

jurisdiction over the remaining state law claims, I see no need to address Downs Racing, L.P.'s Motion to Dismiss (*see* Doc. 13), which addresses the remaining state law claims. Those considerations will be left to resolution in state court.